IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| KATIUS WILLIAMS, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 11-1402-JDT-egb |
| | ) | |
| MIKE STRAIN, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER DENYING MOTIONS TO APPOINT COUNSEL AND MOTIONS
TO AMEND, DISMISSING UNSERVED DEFENDANTS,
GRANTING MOTION FOR SUMMARY JUDGMENT,
CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

The *pro se* Plaintiff, Katius Williams, an inmate at the Riverbend Maximum Security Institution in Nashville, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 addressing his previous confinement at the Northwest Correctional Complex ("NWCX") in Tiptonville, Tennessee. (ECF No. 1.) The Court subsequently granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act, 28 U.S.C. § 1915(a)-(b). (ECF No. 3.) On November 13, 2012, the Court issued an order partially dismissing the complaint and directing that process be issued for six Defendants, NWCX Correctional Officers ("C/O") Mike Strain, Miranda Strain, Brad Gooch and Carrie Burke; and NWCX Sergeants ("Sgt.") Cynthia Casagrande and Jettie Baldridge. (ECF No. 8.) Defendants Burke, Casagrande and Baldridge were duly served and filed an answer (ECF

No. 21), but the process issued for Gooch, Mike Strain and Miranda Strain was returned unexecuted on December 5, 2012. It was noted that Gooch was on sick leave and it was unknown when he would return. (ECF No. 10.) Defendants Mike and Miranda Strain were no longer employed at the NWCX. (ECF Nos. 10-1 & 10-2.) A scheduling order was entered on January 17, 2014, pursuant to which the deadline for amending pleadings was April 18, 2014. (ECF No. 22.)

On September 11, 2015, Plaintiff filed what he termed a "resubmitted" complaint and asked that service be made on the three unserved Defendants. (ECF No. 51.) The Court construes the filing as a motion to amend the complaint. Plaintiff filed another motion to amend on April 13, 2016. (ECF No. 62.) Each of these amended complaints seeks to re-allege all of the claims in the original complaint, many of which were dismissed in the order of partial dismissal. Furthermore, as stated, the deadline for amending pleadings in this case was April 18, 2014. Plaintiff has offered no explanation for why he waited almost fifteen months before "resubmitting" his complaint. Therefore, the motions to amend are DENIED.

The Court also finds that Plaintiff has not been diligent in his efforts to have process re-issued for the unserved Defendants. The returns by the U.S. Marshal were filed on December 5, 2012, but Plaintiff waited almost three years before he took any further action to remedy the defect. *See Rochon v. Dawson*, 828 F.2d 1107, 1110 (5th Cir. 1987) ("While Rochon and other incarcerated plaintiffs proceeding in forma pauperis may rely on service by the U.S. Marshals, a plaintiff may not remain silent and do nothing to effectuate such

2

service. At a minimum, a plaintiff should . . . attempt to remedy any apparent service defects of which [he] has knowledge."). At this stage of the proceeding, essentially starting the litigation over would significantly prejudice the Defendants who were served and who have expended substantial effort to defend the case. Therefore, Defendants Mike Strain, Miranda Strain and Brad Gooch are hereby DISMISSED for lack of service of process.

Along with the "resubmitted" complaint, Plaintiff filed a second motion to appoint counsel. (ECF No. 52.) He filed a third such motion on April 13, 2016. (ECF No. 63.) However, for the same reasons stated in the Court's denial of Plaintiff's initial motion for appointment of counsel (*see* ECF No. 16 at 2-3), the Court finds that appointed counsel is not warranted in this case. Therefore, the motions are DENIED.

On October 14, 2015, Defendants Baldridge, Burke and Casagrande filed a motion for summary judgment. (ECF No. 55.) The Court granted Plaintiff an extension of time to respond to Defendants' motion on October 21, 2015. (ECF No. 57.) Plaintiff subsequently filed a second motion for extension of time (ECF No. 58), and on January 15, 2016, he filed his response to the summary judgment motion (ECF No. 61). The Court DENIES the motion for an extension as moot and accepts Plaintiff's response as timely filed.

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Rule 56(c)(1)

provides that "[a] party asserting that a fact cannot be or is genuinely disputed" is required to support that assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers or other materials;[1] or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)" the district court may:

> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

In *Celotex Corp.*, the Supreme Court explained that Rule 56:

> mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

---

[1] "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Additionally, Rule 56(c)(4) specifically provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

4

which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

477 U.S. at 322-23. In considering whether to grant summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (same). However, the Court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

The remaining claims against Defendants Baldridge, Casagrande and Burke involve disciplinary proceedings that were brought against Plaintiff:

> Plaintiff filed grievances complaining about the . . . actions of Miranda [Strain] and Gooch. ([Compl. ¶ 21, ECF No. 1 at 8.]) Defendants Casagrande, Marks, and Dozier held a hearing on the grievances. (*Id.* ¶ 24 at 9.) In response to a question by Defendant Casagrande, Plaintiff stated that he believed that Miranda should be fined. (*Id.* ¶¶ 25-26.) Casagrande then allegedly "became very aggressive and hostile toward the Plaintiff, and she told the Plaintiff to leave the hearing." (*Id.* ¶ 27.) Plaintiff questioned why he had to leave before the conclusion of the hearing, and he was told that if he did not do so, he would be written up. (*Id.* ¶ 28.) Plaintiff left the hearing and filed a complaint charging Casagrande with unprofessional behavior. (*Id.* ¶¶ 29-30 at 9-10.)

5

Defendant Casagrande allegedly reviewed Plaintiff's grievance against her and, in response, issued him an unspecified disciplinary write-up to make the grievance void. (*Id.* ¶ 31 at 10.) . . . Plaintiff requested a hearing and stated that he intended to have an attorney present, and Baldri[d]ge set a hearing date for December 23, 2010. (*Id.* ¶ 34.)

On December 23, 2010, Baldri[d]ge told Plaintiff that his disciplinary hearing would be rescheduled for December 25, 2010. Baldri[d]ge did not offer an explanation for the change. (*Id.* ¶ 35 at 11.) Two hours later, Plaintiff visited with his attorney. (*Id.* ¶ 36.) After his attorney left, Defendant Dembrowski told Plaintiff to get ready for his disciplinary hearing. (*Id.* ¶ 37.) Plaintiff responded that his hearing had been rescheduled and his attorney had left (*id.* ¶ 38), and he asked Dembrowski to explain to Baldri[d]ge, the disciplinary hearing chairman, that he needed a few minutes to get someone to call his attorney back (*id.* ¶ 39). Shortly thereafter, Dembrowski returned and told Plaintiff that Baldri[d]ge was going to have the hearing without Plaintiff because he had refused to attend. (*Id.* ¶ 40 at 12.) Plaintiff replied that he was not refusing to attend his disciplinary hearing. (*Id.* ¶ 41.) . . .

. . . .

(ECF No. 8 at 2-3.)

On February 7, 2011, Plaintiff . . . observed Miranda [Strain] talking to her sister, Defendant Burke, and pointing to Plaintiff's cell door. (*Id.* ¶ 63.) Burke then entered the pod to assist with serving lunch. Burke did not serve Plaintiff lunch. (*Id.* ¶ 64 at 17.) Plaintiff filed grievances on Miranda and on Burke. (*Id.* ¶¶ 65-66.) Plaintiff complained to Nelson, the corporal in charge of the segregation unit, who responded that Plaintiff should have thought about being treated right before he filed his grievances on her officers. Nelson also allegedly told Plaintiff that "if he didn't want to die of starvation that he should stop filing complaints on her officers." (*Id.* ¶ 67.) Subsequently, on February 18, 2011, Plaintiff received a write-up from Defendant Burke, who stated that she did not feed Plaintiff because he was masturbating. (*Id.* ¶ 73 at 18.)
. . . .

(ECF No. 8 at 5-6.)

Defendants contend the evidence in the record demonstrates they did not violate Plaintiff's right to due process in connection with any disciplinary charges or hearings. In

6

support of the motion for summary judgment, they have submitted the Affidavits of Casagrande (Casagrande Aff., ECF No. 55-3), Baldridge (Baldridge Aff., ECF No. 55-4), Burke (Burke Aff., ECF No. 55-5), Sgt. Sandy Cagle (Cagle Aff., ECF No. 55-6), and Candace Whisman (Whisman Aff., ECF No. 55-7). In opposition to the Defendants' motion, Plaintiff has submitted his own Affidavit. (Williams Aff., ECF No. 61-1.)

With regard to the claims against Defendants Casagrande and Baldridge, they contend Plaintiff cannot establish that he did not receive a fair hearing or that he was deprived of a protected liberty interest. Plaintiff contends that Casagrande issued a false write-up against him for disrespect towards staff[2] after he had a verbal exchange with her during a grievance hearing on December 15, 2010, at which she was the chairperson. Plaintiff immediately filed a grievance against Casagrande, and he contends that when she found out about it, Casagrande retaliated by writing him up on a false charge.[3] (Williams Aff. ¶¶ 4-9, ECF No. 61-1 at 1-2.)

Plaintiff told Defendant Baldridge, the Disciplinary Chairman at the time, that he wanted his attorney to be present at the disciplinary hearing, and Baldridge scheduled the hearing on the charge of disrespect of staff for December 23, 2010. (*Id.* ¶ 13, at 3.) Plaintiff contends that on December 23, Baldridge advised him the hearing had been rescheduled for

---

[2] Plaintiff did not specify the nature of the charge in the complaint. However, Casagrande and Baldridge's Affidavits indicate the charge was for disrespect towards staff. (Casagrande Aff. ¶¶ 7-10, ECF No. 55-3 at 1-2; Baldridge Aff. ¶ 7, ECF No. 55-4 at 1-21.)

[3] The retaliation claim itself was dismissed in the initial order of partial dismissal. The only claim remaining against Casagrande is a claim for the allegedly false write-up.

7

December 25, 2010. (*Id.* ¶ 14.) Two hours later, Plaintiff's attorney visited; because he believed the disciplinary hearing had been postponed, Plaintiff did not discuss the matter with counsel. (*Id.* ¶ 15.)

Plaintiff further contends that after his attorney left, Baldridge sent another officer to tell Plaintiff to prepare for his hearing that day. Plaintiff responded that he had just been told the hearing had been rescheduled and that his attorney had already left; he told the officer to tell Baldridge he needed time to recall his attorney. (*Id.* ¶¶ 16-17.) "Moments later," the officer came back to say that Baldridge was going to proceed with the hearing without Plaintiff, since he refused to attend. (*Id.* ¶ 18, at 4.) Plaintiff protested that he was not refusing to attend the hearing, he just needed time to contact his attorney in order to properly prepare. (*Id.* ¶ 19.)

Nothing in Defendant Baldridge's Affidavit indicates whether she informed Plaintiff that the December 23rd hearing had been rescheduled. Baldridge states only that, "[o]n the day of the hearing, [Plaintiff's] attorney was not present or available." (Baldridge Aff. ¶ 8, ECF No. 55-4 at 2.) Thus, the Court takes as true Plaintiff's assertion that Baldridge told him the hearing had been rescheduled but then called him to the hearing on the original date.

Defendant Baldridge states that Plaintiff refused to attend after being told multiple times to get dressed and come to the hearing, finally becoming "loud and verbally abusive, insisting he would not attend." (*Id.* ¶ 9.) She then chose to hold the disciplinary hearing without Plaintiff in attendance and states that, notwithstanding his absence, he was given a full and fair hearing. An inmate advisor sat in on Plaintiff's behalf. (*Id.* ¶ 11.) Two officers

testified at the hearing that they saw Plaintiff's disrespect toward Defendant Casagrande during the grievance proceeding. (*Id.* ¶ 12.) Based on that evidence, the Disciplinary Board found Plaintiff guilty of the charge. (*Id.* ¶ 13.) Plaintiff's appeals were denied, and he was sentenced to a small fine but did not lose any sentence credits. (*Id.* ¶¶ 14-15, at 2-3; *see also* Cagle Aff. ¶¶ 6-7, ECF No. 55-6 at 1-2; Whisman Aff. ¶¶ 3-4, ECF No. 55-7 at 1-2.)

As the Court stated in the order of partial dismissal, a prisoner cannot sue for the issuance of a false disciplinary charge when he has had a fair hearing on that charge. *Jackson v. Madery*, 158 F. App'x 656, 662-63 (6th Cir. 2005); *see also McMillan v. Fielding*, 136 F. App'x 818, 820 (6th Cir. 2005) ("McMillan's complaint with regard to the false charges fails to state a Fourteenth Amendment claim. . . . Even if McMillan had a liberty interest in remaining free from lock up, loss of package privileges, and a fine, his due process right was fulfilled by his disciplinary hearing."). Although Plaintiff contends he did not have a fair hearing, that contention is based on the assertion that he did not refuse to attend; instead, he was not "allowed" to attend because Baldridge manipulated the timing of the hearing so that his attorney could not be there. (ECF No. 61 at 4.) Under those circumstances, Plaintiff contends that convicting him *in absentia* was a violation of due process.

Plaintiff's argument is not well taken. There is no right to counsel in prison disciplinary hearings. *Baxter v. Palmigiano*, 425 U.S. 308, 315 (1976); *Wolff v. McDonnell*, 418 U.S. 539, 570 (1974). Therefore, the fact that Plaintiff's attorney could not be present

9

at the hearing does not render the proceeding unfair. As Defendant Baldridge contends, Plaintiff simply chose not to attend the hearing unless he could have his attorney present.

Plaintiff also appears to assert that he was not given enough time to prepare for the hearing. However, the due process protections set out in *Wolff* require notice of the charges at least twenty-four hours prior to the hearing, 418 U.S. at 563-64, which Plaintiff clearly was given. Additional time to prepare for the hearing is not necessary.

The evidence in the record shows that Plaintiff was given all of the procedural safeguards that may have been due with regard to the charge of disrespect toward staff and that he had a full and fair hearing on that charge, even in his absence. Moreover, because Plaintiff concedes that he did not lose any sentence reduction credits as a result of the disciplinary conviction, (*see* Resp. #5, ECF No. 61-2 at 2), he did not have a constitutionally protectable liberty interest that would trigger *Wolff*'s due process protections. *See, e.g., Sandin v. Conner*, 515 U.S. 472, 484, 486-87 (1995).

Plaintiff's claims against Defendant Burke also arise out of an allegedly false disciplinary write-up. He contends that on February 7, 2011, Burke entered the Pod to help give the inmates their lunch, but when she came to his cell she skipped over him without giving him any food "for no apparent reason." (Williams Aff. ¶ 21, ECF No. 61-1 at 4.) Several days later, Burke filed a disciplinary charge against Plaintiff for sexual misconduct. She states that when she approached his cell to give him his lunch, he exposed himself to her and began masturbating. (Burke Aff. ¶¶ 6-7, ECF No. 55-5 at 1-2.) For that reason, she had

a male officer deliver Plaintiff's lunch tray to him that day; Plaintiff was not denied lunch. (*Id.* ¶¶ 8-9, at 2.)

Plaintiff later pled guilty to the charge of sexual misconduct, although he claims that he did so only because he was threatened with "street charges, loss of good time, and other serious oppressive punishments." (Williams Aff. ¶ 23, ECF No. 61-1 at 4.) Nevertheless, the evidence shows that Plaintiff did not actually suffer any such "oppressive" punishments; he was required to pay only a $4.00 fine. (Burke Aff. ¶ 10-12, ECF No. 55-5 at 2; *see also* Cagle Aff. ¶¶ 6-7, ECF No. 55-6 at 1-2; Whisman Aff. ¶¶ 3-4, ECF No. 55-7 at 1-2.) Because of the guilty plea, no disciplinary hearing was necessary, foreclosing any due process claim regarding procedures that would have been used in the hearing.

For all of the foregoing reasons, the Court finds there are no genuine issues of material fact for trial in this case. Therefore, the motion for summary judgment filed on behalf of Defendants' Casagrande, Baldridge and Burke is GRANTED.

Pursuant to 28 U.S.C. § 1915(a)(3), the Court must also consider whether an appeal by Plaintiff in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* The same considerations that lead the Court to grant summary judgment also compel the conclusion that an appeal would not be taken in good faith.

Therefore, it is CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Plaintiff nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). *McGore* sets out specific procedures for implementing the PLRA, 28 U.S.C. § 1915(a)-(b). Therefore, the Plaintiff is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in *McGore* and § 1915(a)(2) by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE